The next case is United States v. Lopez. Good morning, Your Honors. May it please the Court. First, I'd like to thank the Court for granting the motion to expedite this appeal given the short sentence involved. What I'd like to discuss with the Court is the argument that there was insufficient evidence of a And it is the impact of his mental illness, schizophrenia, which is the core of the argument. The Court at page 107 of the appendix found that he was not laboring under any disability. I respectfully submit that was clear error. The record in this case demonstrates a Did counsel at that hearing tell the Court that this was a reflection of his schizophrenia, that he was having a psychotic break? He did not. He did not. The contention here is that looking at the Court's findings that supported the violation here was a finding that he was not laboring under any disability. And I respectfully submit that that would be inaccurate. If he was laboring under such a severe disability, such as schizophrenia, as having an effect on whether he was committing a knowing violation of that special condition, then we submit that there would not be sufficient evidence of a violation here. But absent a contemporaneous objection or something being apparent on the face, why was the district court required, why was it clear error for the district court to conclude that, as Lopez said, there was a misunderstanding? Well, I think it was his mental illness was always there. So it was through a course of proceedings. This wasn't the last one. I mean, this was a series in which his mental illness was always an issue. And his mental illness was first brought up 10 months earlier. His trial counsel at that time said that he was suffering from serious mental illness, including schizophrenia, and that it was something that he was struggling with for most of his adult life and that he was using drugs to self-medicate. It's also in the record here that he stopped taking his medications. He didn't like the side effects, and he testified that he was not medicated when he appeared for this intake interview, which was the whole core of— He was to receive mental health treatment while at the halfway house, correct? Well, there was an order. And it's interesting, the order was a little bit different here than the prior order that had been given. The prior order was a direct order that he receive mental health treatment. This is the resentencing. But in the order, the subsequent order here at issue when he's ordered to the halfway house, it was mental health treatment if needed, if directed. So it was a conditional order. It was also an order that didn't require the mental health treatment first, and that's one contention here, I think, looking at this record. And perhaps hindsight is 20-20. But in a sense, that's what happened here, is come back, he didn't comply. There was a concern by the judge that he wouldn't be able to comply. The judge noted, I don't feel comfortable wondering whether you're going to be back here again. And I think it was all related to just how serious this mental illness he had was. So in turning to then looking at what happened in this intake interview, I think there is an argument here that it was purely symptomatic of his schizophrenia, untreated. And so what was the first thing that? The difficulty is, and I'm just echoing my colleague, but that wasn't raised before the district court. I mean, he testified that it was a misunderstanding. That hearing took place months after the petition was filed. True. It's hard to fault the district court for not focusing on this when it didn't seem to be the focus of what your client was raving. Judge Larimer is an excellent judge, and Judge Larimer definitely did. I would say you look at this record bent over backwards. I submit, though, particularly given the knowledge, existing knowledge, and it being brought up during the course of proceedings, over ten months of his mental health having a bearing on what was going on and that he was having trouble with compliance up to this point. And the judge's, I would say, understanding, even though it was not raised by counsel, that it was an issue and make a finding that he was not laboring under a disability. The judge also said that he had mental health issues in the past. Well, I submit that that is not consistent with the disease of schizophrenia. It is chronic. It is, frankly, it often gets worse. It certainly, when we see what he did, where he says, first, I can't comprehend. I couldn't comprehend what he needed to explain to me. Well, that's an absolute feature of schizophrenia. It affects the mind's ability to process and perceive what is going on around them. And definitely information processing dysfunctions in schizophrenia. So that would be one. Then the second thing is irritation, belligerence, anger. Again, an absolute feature of schizophrenia. And then finally to this irrational response to the situation where he says, first, I think I've done enough time, and therefore I'm not going to do any more time in the halfway house. And if that was the only thing said, it might be one thing. But then he turns right around and he's saying, send me to jail. Get the marshals to come and pick me up. I want to go back to prison. Bottom line is, I would say, that just doesn't make sense. And when it's not making sense, it's irrational behavior directly connected, I would say, to his schizophrenia. So that is the argument here as saying that this wasn't a knowing violation. I will point out, by the way, as an officer of the court, in looking at this, I've used the word knowing. And you look at the applicable statute governing here. It doesn't use the word knowing. Now, I would say that I looked in case law, and there are cases where it's come up and arguments have been made about knowing violations. And in those cases, the result has been, yes, the defendant knew. So I've used those cases to point out to the court saying that, well, there are at least some indication of acknowledgment of that mens rea element in it. And I think it's also common sense, frankly. I mean, if you have someone, for example, if there's a condition you have to show up and be interviewed by your probation officer and you get hit by a car and you can't show up, well, no one would say that you violated that condition. It would be because some intervening event happened, something that prevented it. But I do point it out, as an officer of the court, that occurred to me as something to take a look at. I'll reserve the rest for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. My name is Tiffany Lee, and I represent the United States. Upon this Court's remand for sentencing based on his prior violation of supervised release, the district court sentenced Mr. Lopez quite leniently to a period of time served, a term of supervised release of one year, with the first 120 days to be spent at a residential reentry center. The district court expressed doubts as to whether or not Mr. Lopez would be able to comply, even indicating, I hope I don't see you back in two weeks. And then Mr. Lopez replied he would, quote, do his best. Within seven days, Mr. Lopez violated again, this time with respect to the condition pertaining his stay at the residential reentry center. Upon arriving at the Volunteers of America, Mr. Lopez adamantly insisted to his assigned caseworker, Anthony Davis, and to the director of the VOA, Maya Gordine, I am not going to sign any intake documents. I am not going to spend any more minutes for the BOP, the Bureau of Prisons, or for United States probation. The district court conducted a violation hearing. The director of the residential reentry center testified, as did Mr. Lopez, who said that this was all the result of a misunderstanding. He didn't understand the documentation pertaining to intake, but he wanted the opportunity now to go back to the residential reentry center. The district court found that the violation occurred, and sentenced Mr. Lopez to a period of 12 months with no supervised release to follow. Could you take a minute to describe? I mean, your adversary challenges the 12-month sentence as substantially unreasonable, and I have to say, given what seems to be a well-established record of severe mental illness, I'm having a little trouble seeing how the 12-month sentence lines up with the 3553A factors. I mean, he seems to need treatment and supervision, and it's not clear to me that he'll get what he needs while incarcerated for a full year. Could you address that? The district court did consider all the factors, considered the characteristics that this is not a first-time offender. He had a long, you know, multiple history in terms of, you know, criminal violations, but that in addition to, you know, his violations of supervised release. I think the district court did say, did try, has tried time and again to give Mr. Lopez opportunity after opportunity with respect to, you know, additional time with respect to supervised release. But for this particular sentence, in consultation with probation, probation basically indicated this is not an individual who will succeed on supervised release. There needs to be consequence for this current violation in addition to, well, he's basically serving for the first violation, which had to do with drug use, while he was on supervised release, and now this one for failing to comply with court orders. So, in essence, the district court said, we're going to have to do 12 months, but then you're done because there is just no opportunity to try and bring, keep, trying to keep bringing you back. So, and again, as Mr. Bryan noticed, Judge Larimer really gives consideration and tries to give each defendant before him an opportunity to comply, and this didn't happen here. So the evidence here is sufficient to support the violation. Moreover, to the extent that there was any error on the admission of the limited hearsay based on the caseworker's comments to Maya Gordine, that would be held harmless. Finally, the whole idea that what happened was a psychotic episode at the VOA, it's just the record doesn't support it. You know, they had an opportunity to raise that at the violation hearing. Nothing was said of the sort. All that Mr. Lopez said was it was misunderstanding, and I never remember speaking to anyone else other than Mr. Davis. Finally, the sentence here is substantively reasonable and should be affirmed. Unless there are any further questions, the government rests on its omissions. Thank you. Judge Carney, if I might briefly address your question about substantive unreasonableness. Supervised release is not intended to be punishment or further punishment, and the standard here is that a special condition must be reasonably related to the Section 3553A factors, and also a sentence, of course, has to be sufficient but not greater than necessary. So we know what we're dealing with here is a person with serious mental illness, schizophrenia. We also know in this situation that when he was in the Bureau of Prisons and they knew that he had that mental condition, he was medicated. He stopped taking his medication while in prison. He said the side effects were bad. Schizophrenia, and I've presented in the brief. I'm having trouble understanding where you think this person should be. I mean, he should not be in prison. That's your argument. You've also said that he can't really understand the rules of a halfway house. So the third option, I guess, is that he ought to be released at the end of his sentence and wander around the city belligerent and psychotic, and he's going to end up in jail again. The problem, as I see it, is that you are complaining with probably very good justification that this is a matter of a mental health problem and not a criminal justice problem. I don't know what we can do about that. I mean, it is. It's an extremely difficult situation. Where should he be? What I submit, he's going to be released in September. Now, I mean, if we look at this situation, he's going to be released with absolutely nothing. No, no, nothing. Well, if we were to say then that what is a judge's, you know, relating it to the factors, he has a history here, what was the best or what's sufficient, what could the judge have done instead in a difficult situation, my submission here is that ordering, he's still out. Our view is what must be done. I'm asking you, what is the satisfactory result here? Can't be in prison, can't be in a halfway house. The hope, there's no guarantee, the hope that if he's on supervised release and he's first obtaining the mental health treatment, and it's a multidisciplinary approach with schizophrenia, the hope that they can stabilize him, the hope that he gets put on a medication that he doesn't have enough side effects, that they calibrate it right so that he continues on his medication. And they have to work with him to get him to take it. Did he stop taking? Yeah. That was, in fact, working. Well, there are problems, and these drugs are extremely powerful. It depends on the reaction of an individual. He was experiencing side effects that were causing him not to continue to take it. The hope, I would say, and what certainly medical personnel would be trying to do, is to find some sort of medication mixed together with the counseling, sociopsychological counseling, to get him to take it so that he's better off and he doesn't end up back in. Thank you. Thank you both, and we will take it under advisement.